U.S. District Court
Wisconsin Eastern

MAY 04 2026

FILED
Clerk of Court

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

EZEQUIEL RIVERA,
    Plaintiff,

Case No. _____ 20-CV-787

v.

NESTLE USA, INC.,
    Defendant.

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
**42 U.S.C. SECTION 1981**
**JURY TRIAL DEMANDED**

Plaintiff Ezequiel Rivera, proceeding pro se, alleges the following against Defendant Nestle

USA, Inc. This pleading is a federal civil-rights complaint under 42 U.S.C. Section 1981.

**I. CLAIM-SCOPE STATEMENT**

1. This Complaint asserts only claims under 42 U.S.C. Section 1981.

2. The primary live adverse action challenged here is Defendant's April 22, 2026 refusal to rehire

    Plaintiff for the Facilities and Grounds Specialist 1st Shift position, posting number

    383940, at Defendant's Little Chute, Wisconsin facility. See Exhibit C.

3. Plaintiff does not ask this Court to re-decide any prior termination claim or any other claim

    that has already been finally adjudicated. Earlier events are alleged only as background

    evidence of protected activity, Defendant's knowledge, motive, causation, pretext,

    continuing records, damages, and the effect of Defendant's later refusal to enter a new

    employment contract with Plaintiff.

4. The April 22, 2026 refusal to rehire is a later, separate employment decision and a new alleged

    injury to Plaintiff's right to make and enforce employment contracts on equal terms.

1

**5.** To the extent the Complaint discusses workers' compensation, medical treatment, or temporary disability benefits, Plaintiff does not seek review of the workers' compensation award itself and does not seek duplicate recovery of benefits already awarded. Those facts are pleaded only where they show motive, retaliation, pretext, contract-related benefits, continuing records, damages, or background for the Section 1981 claims.

## II. PARTIES

**6.** Plaintiff Ezequiel Rivera is an adult resident of Wisconsin. Plaintiff is Mexican-American, Hispanic, and Latino. Plaintiff is protected under Section 1981 when he is treated adversely because of race, ancestry, ethnicity, or protected complaints opposing race-based discrimination.

**7.** Defendant Nestle USA, Inc. is a corporation doing business in Wisconsin and operating a food production facility in Little Chute, Wisconsin, including the facility involved in the events alleged in this Complaint.

**8.** At all relevant times, Defendant acted through its Human Resources Department, senior human resources manager rachjel holly and Talent Acquisition, managers, supervisors, agents, representatives, employees, claims administrators, and decision-makers acting within the scope of their authority for Defendant.

## III. JURISDICTION AND VENUE

**9.** This Court has subject-matter jurisdiction under 28 U.S.C. Section 1331 because this action arises under federal law, specifically 42 U.S.C. Section 1981.

**10.** This Court also has jurisdiction under 28 U.S.C. Section 1343 because Plaintiff seeks redress for deprivation of federal civil rights.

2

11. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. Section 1391(b) because Defendant operates the relevant Little Chute facility in this District, substantial events occurred in this District, the job Plaintiff sought was located in this District, and the employment records and decision-making at issue are connected to this District.

12. Section 1981 does not require Plaintiff to plead an EEOC right-to-sue notice because Section 1981 is an independent federal statute protecting contract rights.

## IV. SECTION 1981 LEGAL FRAMEWORK

13. Section 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens. The phrase "make and enforce contracts" includes making, performing, modifying, and terminating contracts, and enjoying all benefits, privileges, terms, and conditions of the contractual relationship.

14. Employment and reemployment are contractual relationships protected by Section 1981. Plaintiff's 2026 application for reemployment was an attempt to make a new employment contract with Defendant.

15. Section 1981 protects against intentional discrimination based on race, ancestry, and ethnic characteristics. Plaintiff pleads that discrimination against him as a Mexican-American/Hispanic/Latino employee and applicant is actionable under Section 1981 because the discrimination is tied to race, ethnic characteristics, and ancestry.

16. Section 1981 also prohibits retaliation against a person for opposing race discrimination or for asserting rights protected by Section 1981.

17. For each Section 1981 count, Plaintiff pleads that race, ethnicity, ancestry, and/or protected race-based opposition was a but-for cause of Defendant's challenged conduct.

3

**18.** Plaintiff pleads facts that satisfy the refusal-to-rehire framework recognized in McDonnell Douglas Corp. v. Green, because Plaintiff is Mexican-American, Hispanic, and Latino; he applied for the Facilities and Grounds Specialist 1st Shift position; he was qualified or plausibly qualified based on his prior Nestle utilities and maintenance work at the same Little Chute facility; Defendant rejected him; and Defendant stated it would "pursue other applicants." See Exhibits Q and C.

## V. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A. Employment and Work History

**19.** On July 21, 2022, Defendant offered Plaintiff employment as a Utilities Technician Trainee on 3rd shift at Defendant's Little Chute, Wisconsin facility. The offer letter stated Plaintiff's start date was scheduled for August 8, 2022, his starting pay was $26.35 per hour, and the position included eligibility for company benefits. See Exhibit 1.

**20.** Defendant's offer letter and later HR declaration confirm that Plaintiff entered an employment relationship with Defendant and that Defendant knew Plaintiff's work history, position, pay, training, and facility experience. See Exhibits 1 and B.

**21.** Plaintiff began working for Defendant on or about August 8, 2022. Holly Rajchel, Defendant's Senior Human Resource Manager at the Little Chute facility, later declared that Plaintiff was hired as a Utilities Technician Trainee, performed work on Defendant's utility systems, and worked at the Little Chute facility. See Exhibit B.

**22.** Defendant's own HR declaration states that Holly Rajchel had worked at the Little Chute facility since January 2012 and was Senior Human Resource Manager. See Exhibit B.

**23.** Defendant's HR declaration also identifies Michael Hirn as white/Caucasian and confirms that Rajchel, Stacy Sipiorski, Rusty Radmer, and Neil Scullion participated in the February 2023 investigation concerning Plaintiff. See Exhibit B.

4

**B. Plaintiff's Protected Race-Based Activity and Defendant's Knowledge**

24. On November 3, 2022, Plaintiff reported discrimination and unfair treatment by email to Nestle management. The email stated, among other things, that Plaintiff was being sabotaged to make it look like he did not belong and that he was being discriminated against. See Exhibit 5.

25. Defendant admitted that Plaintiff made a report of alleged discrimination on November 3, 2022 by email. See Exhibit R.

26. On March 6, 2023, Greg Loechtenfeldt forwarded Plaintiff's November 3, 2022 discrimination email to Holly Rajchel, 3 days after rivera was terminated giving Defendant's Senior Human Resource Manager direct notice of Plaintiff's earlier discrimination complaint. See Exhibit 5.

27. On February 26, 2023, Rivera stated in his statement that he was being retaliated against by the department for previous discrimination complaints and that he was being racially discriminated against. See Exhibit E.

28. On February 28, 2023, Plaintiff escalated his complaint to Defendant's corporate People Intouch channel. Plaintiff stated that he had a "racial discrimination complaint" at the Little Chute factory, that Human Resources was not properly taking action, and that he wanted someone outside the Little Chute branch to investigate. See Exhibit S.

29. Plaintiff's November 2022 and February 2023 complaints were protected race-based activity because Plaintiff opposed discrimination tied to race, ethnicity, ancestry, and his status as a Mexican-American/Hispanic/Latino employee. See Exhibits 5, R, E, and S.

30. The Labor and Industry Review Commission later noted in its worker's compensation decision that Plaintiff had filed a discrimination complaint in November 2022 and that Plaintiff alleged the coworker's conduct was racially motivated. See Exhibit A.

5

31. Defendant therefore had actual knowledge of Plaintiff's protected race-discrimination complaints before the later refusal to rehire. Defendant's knowledge is supported by the admitted November 2022 report, the March 6, 2023 forwarding of that report to Senior HR Manager Holly Rajchel, the February 26, 2023 Rivera statement, the February 28, 2023 corporate racial-discrimination complaint, and the LIRC decision's independent summary of the discrimination complaint history. See Exhibits 5, R, E, S, B, and A.

**C. The February 26, 2023 Workplace Injury and Defendant's Records**

32. In the early morning hours of February 26, 2023, Plaintiff was involved in a workplace incident with coworker Michael Hirn at Defendant's Little Chute facility. Plaintiff reported that Hirn pushed him, causing him to twist his right knee and suffer immediate injury. See Exhibits J, U, E, and A.

33. The hospital record from February 26, 2023 states that Plaintiff presented to the emergency department with right knee pain after an argument with another coworker at work and reported that he was pushed hard enough to make his helmet fall off and that he felt he twisted his knee. See Exhibit J.

34. Defendant admitted that Plaintiff reported an injury in the workplace on February 26, 2023. See Exhibit G. Exhibit-T Exhibit-U

35. The workers' compensation claim information states the injury description as: "was pushed by a employee twisting right knee causing torn ACL/menisca." See Exhibit U.

36. The LIRC decision found that the coworker pushed Plaintiff's upper chest with both hands unexpectedly, Plaintiff went backwards approximately four to five feet, and Plaintiff's leg buckled. See Exhibit A.

**37.** The LIRC decision further found that Plaintiff felt immediate right knee pain, backed down immediately, told the coworker his knee was hurting and that he was going to report it, and then reported the incident to his team lead and supervisor. See Exhibit A.

**38.** Defendant and its insurer conceded that Plaintiff sustained a right knee injury arising out of and in the course of his employment. See Exhibit A.

**39.** Defendant admitted it did not call an ambulance for Plaintiff after the February 26, 2023 incident. See Exhibit K.

**40.** Defendant admitted it did not call the police or file a police report on Plaintiff's behalf after the February 26, 2023 incident. See Exhibit I.

**41.** Defendant's discovery response identifies Stacy Sipiorski, Holly Rajchel, and Bruce Wirth as persons who reviewed video surveillance from the February 26, 2023 incident. Defendant denied intentionally deleting the video, but stated that the security videos were overwritten in the ordinary course. See Exhibit H.

**42.** Defendant's internal termination record dated March 3, 2023 nevertheless described the incident as a "fight" and stated that fighting was a violation of Nestle's disciplinary guidelines. See Exhibit O.

**43.** Defendant admitted that Plaintiff was terminated from employment. See Exhibit F. Plaintiff pleads this termination only as background evidence and not as a standalone claim in this Section 1981-only complaint.

**44.** The LIRC decision confirms that the employer characterized the incident as a fight, while Plaintiff strongly disputed that characterization and alleged that the coworker's actions were racially motivated. See Exhibit A.

**45.** The conflict between Defendant's "fight" record and the medical, workers' compensation, Rivera statement, and LIRC evidence supports Plaintiff's allegation that Defendant maintained a damaging and pretextual record that later affected Plaintiff's ability to make a new employment contract with Defendant. See Exhibits A, J, U, E, G, H, and O.

## D. Medical Treatment, Benefit Dispute, and Pretext Evidence

**46.** On April 27, 2023, Plaintiff received a notice from hospital staff the day of the scheduled surgery at the hospital that insurance from Nestle USA had not approved or authorized knee surgery-related services, including a knee ACL arthroscopy procedure with an estimated cost of $34,531.44. See Exhibit Z.

**47.** On June 21, 2023, four months after injury and termination, Nestle USA reported the work injury to the State of Wisconsin and stated Rivera was pushed by an employee causing a torn ACL and torn meniscus. After this report, Rivera began receiving work benefits for work injury. Rivera went four months with no work benefits for injury. See Exhibit U.

**48.** On May 6, 2024, employer and its insurance agents cut work benefits stating to treating doctors office they are not liable for service treatment and claim. See Exhibit B-E.

**49.** The LIRC decision states that Defendant and its insurer conceded the work injury necessitated surgical repair and paid temporary total disability benefits for a period, but later disputed whether Plaintiff remained in his healing period from April 29, 2024 through August 15, 2024. See Exhibit A.

**50.** On July 15, 2025, LIRC reversed in part the administrative law judge's decision and ordered the respondent to pay Plaintiff $18,737.95 in temporary total disability benefits. See Exhibit A.

**51.** LIRC found that Plaintiff had not reached an end of healing as of April 29, 2024, and that he was entitled to temporary total disability benefits from April 29, 2024 to August 15, 2024. See Exhibit A.

**52.** LIRC found Plaintiff's continuing complaints of knee pain and instability were borne out by later treatment recommendations for surgery and that credible doctor opinions and medical evidence showed Plaintiff had not reached the point where all improvement likely to occur had been reached as of April 29, 2024. See Exhibit A.

**53.** The LIRC findings support pretext because they contradict the position used to cut off Plaintiff's benefits and show that Defendant's asserted medical basis for ending benefits was not credited by the reviewing commission. See Exhibits A and B-E.

**54.** The LIRC decision also notes that Plaintiff's worker's compensation filings included issues such as an EEOC claim, wrongful refusal to rehire, and a claim that benefits stopped before a treating doctor's permanent rating. See Exhibit A.

**E. Continuing HR Connection and the 2026 Refusal to Rehire**

**55.** Holly Rajchel's declaration confirms her continuing role as Senior Human Resource Manager at Defendant's Little Chute facility and her involvement in the prior HR investigation and termination decision. See Exhibit B.

**56.** Exhibit D shows that Holly Rajchel was personally served at Defendant's Little Chute facility in September 2025,in a state contract case further supporting that Plaintiff's disputes and protected complaints remained known to Defendant and its HR structure before the later 2026 refusal to rehire. See Exhibit D.

**57.** On April 10, 2026, Plaintiff submitted his application for the Facilities and Grounds Specialist 1st Shift position in Nestle USA, and Nestle Talent Acquisition confirmed the application was successfully submitted. See Exhibit Q.

9

**58.** In April 2026, Plaintiff applied for reemployment with Defendant for the Facilities and Grounds Specialist 1st Shift position, posting number 383940, located in Little Chute, Wisconsin. See Exhibits Q and C.

**59.** Plaintiff sought to enter a new employment relationship and new employment contract with Defendant through the April 2026 application. See Exhibits Q and C.

**60.** On April 22, 2026, Defendant's Talent Acquisition/Human Resources sent Plaintiff an application update stating: "Thanks for applying to the Facilities and Grounds Specialist 1st Shift position. We have decided to pursue other applicants for the posting." See Exhibit C.

**61.** Defendant's April 22, 2026 refusal to rehire Plaintiff is a new adverse employment action and a new alleged impairment of Plaintiff's right to make an employment contract. See Exhibit C.

**62.** Defendant gave only the vague reason that it had decided to pursue other applicants. Defendant did not identify a specific missing qualification, did not state that Plaintiff failed to meet the minimum requirements, and did not provide a comparative explanation. See Exhibit C.

**63.** Plaintiff was facially qualified for reemployment because Defendant had previously hired him, paid him $26.35 per hour, trained him at the Little Chute facility, and used him in utilities-related work. See Exhibits 1 and B.  Exhibit-2

**64.** On information and belief, Defendant's Talent Acquisition and Human Resources decision-makers had access to Plaintiff's prior HR file, discrimination complaints, injury records, termination record, workers' compensation records, and continuing dispute history when

reviewing or rejecting his 2026 application. See Exhibits 5, R, E, S, B, H, O, A, U, Q, and C.

65. On information and belief, Defendant rejected Plaintiff's 2026 application because of his Mexican-American/Hispanic/Latino race, ethnicity, and ancestry, and because he previously opposed race discrimination and pursued race-discrimination complaints against Defendant. EXHiBit-E EXHibit-R

66. Defendant's refusal to rehire caused Plaintiff lost wages, lost benefits, lost employment opportunity, loss of a new employment contract, emotional distress, humiliation, reputational harm, and continuing damage to his career. EXHibit - C

67. Plaintiff continued searching for work and received other job-application rejections around April 2026, including from Oshkosh/Pierce Manufacturing, Club Car Wash, Intertape Polymer Group, and Great Northern Corporation. These exhibits support mitigation and damages, including Plaintiff's effort to obtain replacement work after Defendant's conduct damaged his employment path. See Exhibits P, N, M, and L.

68. Defendant's stated reason for terminating Plaintiff in March 2023 was an alleged violation of its "fighting" policy. This termination is not being re-litigated, but the company record of this event is the direct cause of the April 22, 2026 refusal to rehire. See Exhibits O, B, and C.

69. The creation of the "fight" record was inextricably bound up with Plaintiff's protected complaints of race discrimination. The February 26, 2023 incident involved a physical assault by a white coworker, which Plaintiff reported as racially motivated. Defendant's investigation, led by Senior HR Manager Holly Rajchel, focused on Plaintiff's allegation

11

of racial discrimination during the physical altercation. See Exhibits B, S, 5, R, and E. The company then rejected this claim and created the "fight" label.

70. Therefore, the "fight" label is not a neutral, non-discriminatory record. It is the direct product of the company's rejection of, and retaliation for, Plaintiff's protected activity. To rely on this record as the basis for the 2026 refusal to rehire is to rely on a reason that is, in its origin and essence, retaliatory and discriminatory.  Exhibit -O

71. Consequently, if Defendant states it rejected Plaintiff's 2026 application "because of" the circumstances of his 2023 termination - the "fight" - that stated reason is not legitimate; it is the same pretextual and retaliatory logic that caused Plaintiff's damages in 2023 and a new, independent act of retaliation in 2026, and future employers see Exhibits L, M, and N. To refuse to rehire Plaintiff because of the "fight" is to retaliate against him for his complaints of discrimination that led to that false label.  E Xhibit -O

72. Defendant's April 22, 2026 refusal to rehire Plaintiff constitutes a new and discrete adverse employment action that arose after the conclusion of Plaintiff's prior litigation. It is well established that each discrete act of discrimination or retaliation - such as termination, failure to hire, or refusal to rehire - constitutes a separate actionable unlawful employment practice. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002). Accordingly, Defendant's refusal to rehire Plaintiff gives rise to an independent cause of action, notwithstanding any factual relationship to Plaintiff's prior employment or earlier claims.  Exhibit - C

## VI. COUNT I - RETALIATION IN VIOLATION OF 42 U.S.C. SECTION 1981

### Refusal to Rehire / Refusal to Make a New Employment Contract

73. Plaintiff incorporates paragraphs 1 through 72 as though fully set forth in this Count.

74. Element 1 - Protected Section 1981 activity. Plaintiff engaged in protected activity by opposing race, ethnicity, and ancestry discrimination at Defendant's Little Chute facility. Plaintiff reported discrimination by email on November 3, 2022; Defendant admitted that report; Plaintiff stated on February 26, 2023 that he was being racially discriminated against and retaliated against; and Plaintiff later reported a racial discrimination complaint through Defendant's corporate People Intouch system on February 28, 2023. See Exhibits 5, R, E, and S.

75. Element 2 - Defendant knowledge. Defendant knew of Plaintiff's protected activity. Management received the November 2022 complaint, Defendant admitted the complaint existed, Greg Loechtenfeldt forwarded the complaint to Senior HR Manager Holly Rajchel, Plaintiff made the February 26, 2023 statement, and Plaintiff reported a racial discrimination complaint to corporate. See Exhibits 5, R, E, S, and B.

76. Element 3 - Contract-related interest. Plaintiff attempted to make a new employment contract with Defendant when he applied for the Facilities and Grounds Specialist 1st Shift position at Little Chute in April 2026. Employment and reemployment are contract relationships protected by Section 1981. See Exhibits Q and C.

77. Element 4 - Qualification. Plaintiff was qualified or plausibly qualified because Defendant had previously hired him into a skilled utilities role at the same facility, paid him $26.35 per hour, trained him, and knew his facility experience. See Exhibits 1 Exhibit-2 and B.

**78.** Element 5 - Materially adverse action. Defendant refused to rehire Plaintiff on April 22, 2026 when it told him it had decided to pursue other applicants for the Little Chute Facilities and Grounds Specialist 1st Shift position. See Exhibit C.

**79.** Element 6 - But-for causation. Plaintiff alleges his protected race-discrimination complaints were a but-for cause of Defendant's refusal to rehire him. Causation is supported by Defendant's actual knowledge, the same Little Chute facility, the same HR structure, Rajchel's knowledge and prior involvement, Defendant's continued maintenance of the disputed "fight" record, the vague rejection, and the absence of any specific qualification-based explanation. See Exhibits 5, R, E, S, B, D, O, H, A, Q, and C.

**80.** Element 7 - Pretext. Defendant's stated reason that it decided to pursue other applicants is vague and pretextual. Defendant did not identify any lack of qualification; Defendant had firsthand knowledge of Plaintiff's prior skilled work; Defendant had reason to rely on a disputed and damaging HR file; and independent records show that Plaintiff had reported race discrimination and was pushed and injured at work, contrary to the simplified "fight" narrative. See Exhibits 1, 2, B, Q, C, A, J, U, E, H, and O.

**81.** A reasonable person would be deterred from opposing race discrimination if an employer could later refuse to rehire that person after maintaining disputed HR records and giving only a vague non-selection reason.

**82.** Defendant's conduct violated Section 1981 because Defendant retaliated against Plaintiff for opposing race discrimination and impaired Plaintiff's right to make a new employment contract on equal terms.

## VII. COUNT II - RACE, ETHNICITY, AND ANCESTRY DISCRIMINATION IN VIOLATION OF 42 U.S.C. SECTION 1981

### Discriminatory Refusal to Rehire / Refusal to Contract

83. Plaintiff incorporates paragraphs 1 through 72 as though fully set forth in this Count.

84. Element 1 - Protected class. Plaintiff is Mexican-American, Hispanic, and Latino. Plaintiff alleges discrimination based on race, ancestry, and ethnic characteristics protected by Section 1981.

85. Element 2 - Defendant intended to discriminate. Plaintiff alleges Defendant intentionally refused to rehire him because of his race, ethnicity, and Mexican ancestry. The inference of intent is supported by Plaintiff's repeated race-discrimination complaints, Defendant's knowledge of those complaints, and Defendant's later unexplained refusal to rehire him at the same facility. See Exhibits 5, R, E, S, B, D, Q, and C. Exhibit-O

86. Element 3 - Contractual relationship. Plaintiff sought to make a new employment contract with Defendant through the 2026 application for the Facilities and Grounds Specialist 1st Shift position. See Exhibits Q and C.

87. Element 4 - Qualification. Plaintiff was qualified or plausibly qualified because Defendant previously hired him, paid him a skilled hourly wage, and employed him in utilities-related work at the same facility. See Exhibits 1 Exhibit-2 and B.

88. Element 5 - Adverse action. Defendant rejected Plaintiff for the 2026 Little Chute position and stated it would pursue other applicants. See Exhibit C.

89. Element 6 - But-for causation. Plaintiff alleges his race, ethnicity, and ancestry were but-for causes of Defendant's refusal to rehire him. But-for causation is supported by the same facility, institutional HR knowledge, Senior Human Resources Manager Holly Rajchel, prior race-discrimination complaints, the adverse HR narrative maintained after Plaintiff

was pushed and injured, and the unexplained selection of other applicants. See Exhibits 5, R, E, S, B, A, J, U, O, H, Q, and C.

**90.** Element 7 - Pretext. Defendant's vague phrase "pursue other applicants" is not a complete, specific, or transparent reason. A jury could find pretext because Defendant knew Plaintiff's qualifications, knew his protected class and complaints, had a disputed HR record labeling him as involved in a fight, and had no identified non-discriminatory basis in the rejection email. See Exhibits 1,Exhibit-2  B, C, O, A, J, U, E, 5, S, R, Q, and H.

**91.** Defendant's conduct denied Plaintiff the same right to make an employment contract as white applicants and applicants who had not opposed discrimination.

**92.** Defendant's conduct violated 42 U.S.C. Section 1981.

16

## VIII. COUNT III - SECTION 1981 RETALIATION / POST-EMPLOYMENT INTERFERENCE IN VIOLATION OF 42 U.S.C. SECTION 1981

### Employment-Related Benefits, Records, and Future Contract Opportunities

93. Plaintiff incorporates paragraphs 1 through 72 as though fully set forth in this Count.

94. This Count is pleaded to the extent the Court determines the alleged post-employment interference is actionable under Section 1981. Plaintiff does not ask this Court to review the workers' compensation award but to see the pattern of retaliation from Nestle USA committed against Ezequiel Rivera.

95. Element 1 - Protected activity. Plaintiff engaged in protected race-based activity by opposing discrimination on November 3, 2022, February 26, 2023, and February 28, 2023, and by continuing to dispute racially motivated treatment. See Exhibits 5, R, E, S, and A.

96. Element 2 - Defendant knowledge. Defendant had actual and institutional knowledge of Plaintiff's protected activity through management, corporate People Intouch, Human Resources, Senior HR Manager Holly Rajchel, and Defendant's admission that Plaintiff reported discrimination. See Exhibits 5, R, E, S, B, O, and D.

97. Element 3 - Contract-related rights. Plaintiff's employment-related benefits, HR records, work-injury records, and future reemployment opportunities were connected to the benefits, privileges, terms, and conditions of his employment relationship and his right to make and enforce future employment contracts. See Exhibit A.Exhibit-1 Exhibit-2

98. Element 4 - Adverse interference. After Plaintiff opposed race discrimination, Defendant and its agents maintained the damaging "fight" record, disputed and interfered with employment-related injury benefits, relied on a medical position later rejected by LIRC, failed to preserve relevant video after HR review, and later refused to rehire Plaintiff. See Exhibits O, A, B-E, Z, H, Q, and C.

Case 1:26-cv-00787-BBC    Filed 05/04/26    Page 17 of 20    Document 1

**99.** Element 5 - Pretext and contradiction. The LIRC decision supports pretext because LIRC found Plaintiff had not reached end of healing as of April 29, 2024, awarded $18,737.95 in temporary total disability benefits, and credited evidence showing Plaintiff still required treatment. See Exhibit A.

**100.** Element 6 - But-for causation. Plaintiff alleges that retaliation for Plaintiff's race-discrimination complaints was a but-for cause of Defendant's post-employment interference with records, benefits, and future contract opportunities. The inference is supported by Defendant's knowledge, the continuing "fight" narrative, the LIRC findings, the later rejection for reemployment, and Defendant's vague stated reason for refusing to rehire. See Exhibits 5, R, E, S, B, O, A, H, B-E, Z, Q, and C.

**101.** The post-employment interference would deter a reasonable employee from opposing race discrimination because it threatened income, medical recovery, reputation, HR records, and future employment opportunities.

**102.** To the extent these actions interfered with Plaintiff's employment-related contractual rights or future contract opportunities because of protected race-based opposition, Defendant violated Section 1981.

## IX. DAMAGES

**103.** As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages including lost wages, lost benefits, lost opportunity to make a new employment contract, lost earning capacity, emotional distress, humiliation, reputational harm, medical and financial hardship, and other consequential damages.

18

**104.** Plaintiff seeks back pay and front pay or instatement/reemployment for the April 22, 2026 refusal-to-rehire injury, along with compensatory damages, punitive damages, costs, and attorney's fees to the extent permitted by law, including 42 U.S.C. Section 1988.

**105.** Plaintiff also seeks equitable relief requiring Defendant to correct, remove, or neutralize any false or pretextual records that label Plaintiff as a fighter or otherwise impair his future employment-contract rights.

**106.** Plaintiff's mitigation efforts and continuing job search are supported by the 2026 application rejection exhibits from Oshkosh/Pierce Manufacturing, Club Car Wash, Intertape Polymer Group, Great Northern Corporation, and Defendant Nestle. See Exhibits P, N, M, L, and C.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant Nestle USA, Inc. and award the following relief:

- A declaratory judgment that Defendant violated 42 U.S.C. Section 1981;

- Back pay, front pay, lost benefits, and/or instatement or reemployment for the April 22, 2026 refusal-to-rehire injury;

- Compensatory damages for emotional distress, humiliation, reputational harm, financial loss, and loss of employment-contract opportunity;

- Punitive damages because Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights;

- An order requiring Defendant to correct, remove, or neutralize false or pretextual employment records that impair Plaintiff's future contract rights;

- Prejudgment and post-judgment interest;

19

• Costs and attorney's fees as permitted by law, including 42 U.S.C. Section 1988; and

• All other legal and equitable relief the Court deems just and proper.

## XI. JURY DEMAND

**107.** Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: May 4 , 2026

Ezequiel Rivera
Plaintiff, Pro Se
P.O. Box 7599
Appleton, WI 54914
Telephone: (404) 496-1860

20